IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

David D. Stanfield, Plaintiff,

vs.

Jarrel Wigger; Angelica Hattaway; Gina Reeves; Thomas L. Hughston, Jr.; and Kristi L. Harrington, Defendants.

C/A: 2:14-839-MBS-BHH

**REPORT AND RECOMMENDATION**

This is a civil action filed by a pro se litigant. Plaintiff paid the full $400.00 filing fee. See Receipt No. SCX200011199 (DSC); ECF No. 1. The case is presently before the undersigned United States Magistrate Judge for report and recommendation following pre-service review pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(e) of the United States District Court for the District of South Carolina. This case is subject to summary dismissal because Plaintiff's factual allegations and claims do not fall within the scope of either form of this Court's limited jurisdiction, and there is no other possible basis for federal jurisdiction evident from the face of the pleadings. There is no viable federal question alleged and there is no diversity of citizenship between Plaintiff and Defendants. Accordingly, Plaintiff's Amended Complaint (ECF No. 6) should be dismissed, without prejudice, and Plaintiff's Motion for Preliminary Injunction and Emergency TRO (ECF No. 7) should be denied.

**STANDARD OF REVIEW**

Under established local procedure in this judicial district, a careful review has been made of the pro se pleadings. Plaintiff's Amended Complaint is subject to review pursuant

to the inherent authority of this Court to ensure that a plaintiff has standing, that subject matter jurisdiction exists, and that a case is not frivolous.[1] See Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 363-364 (2d Cir. 2000). See also Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 307-308 (1989) (mentioning in dicta that "[s]tatutory provisions may simply codify existing rights or powers. Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision"); Pillay v. INS, 45 F.3d 14, 16-17 (2nd Cir. 1995) (noting that where a pro se party filed an appeal and paid the filing fee, 1915(d) was not applicable, however, the court had "inherent authority, wholly aside from any statutory warrant, to dismiss an appeal or petition for review as frivolous"); Rolle v. Berkowitz, No. 03 Civ. 7120 DAB RLE, 2004 WL 287678, at *1 (S.D.N.Y. Feb. 11, 2004) (finding it appropriate to dismiss sua sponte and with prejudice a fee-paying pro se plaintiff's action when the claims presented no arguably meritorious issue to consider); Cummings v. Giuliani, No. 00 Civ. 6634 SAS, 2000 WL 1597868, at *2 (S.D.N.Y. Oct. 24, 2000) (dismissing a non-prisoner pro se fee-paid civil action that presented no arguably meritorious claim).

---

[1] Authority in this district indicates that pre-screening, under 28 U.S.C. § 1915, is inapplicable in pro se, non-prisoner, fee-paid cases. See Bardes v. Magera, C/A No. 2:08-487-PMD-RSC, 2008 WL 2627134 at *8-10 (D.S.C. June 25, 2008) (finding persuasive the Sixth Circuit's opinion in Benson v. O'Brian, 179 F.3d 1014 (6th Cir. 1999), that § 1915(e)(2) is inapplicable to actions that are not pursued in forma pauperis); Key v. United States Dep't of Transp., No. 2:01-CV-3076-18RB (D.S.C. Dec. 7, 2001, Order) (finding that a pro se non-prisoner plaintiff has to invoke § 1915 before the pre-screening under § 1915 applies to the case). The undersigned is not conducting an initial review pursuant to 28 U.S.C. § 1915(e)(2) because Plaintiff has paid the filing fee.

This Court is required to liberally construe pro se complaints. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Such pro se complaints are held to a less stringent standard than those drafted by attorneys, id., Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for “all civil actions”). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or “conjure up questions never squarely presented” to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**BACKGROUND**

Plaintiff, a citizen and resident of Cottageville, in Colleton County, South Carolina, filed his original Complaint (ECF No. 1), on March 11, 2014, against Defendants Wigger, Hattaway, and Reeves, alleging that they conspired to defraud Plaintiff by filing a meritless

and frivolous lawsuit for slander against him in Charleston County Common Pleas Court. Plaintiff alleges that these Defendants conspired to commit fraud by claiming proper attempted service and service of process upon him in the lawsuit, and by obtaining a fraudulent default judgment in excess of $121,000.00 against Plaintiff in his absence. Plaintiff alleges that these Defendants are attempting to enforce the fraudulent judgment by depriving Plaintiff of his property in Colleton County. Complaint, ECF No. 1, p. 1-2. Plaintiff's original Complaint asks this Court to find these Defendants guilty of federal crimes in violation of 18 U.S.C. §§ 241 and 242,[2] and seeks injunctive relief and monetary damages of $100,000.00, for violations of 42 U.S.C. §§ 1983[3] and 1985.[4] Id. at p. 9.

---

[2] Plaintiff does not have a constitutional right to, or, in fact, any judicially cognizable interest in, the criminal prosecution or non-prosecution of another person. See Leeke v. Timmerman, 454 U.S. 83, 86-87 (1981); Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). "The benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." Town of Castle Rock v. Gonzales, 545 U.S. 748, 768 (2005) (referencing DeShaney v. Winnebago County Dep't. of Social Servs., 489 U.S. 189 (1989)).

[3] Not itself a source of substantive rights, § 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. See McKnight v. Rees, 88 F.3d 417(6th Cir. 1996). To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

[4] Section 1985 pertains to a conspiracy to interfere with civil rights. Historically, § 1985 was intended to encompass only those conspiracies motivated by animus against the kind of classes Congress was trying to protect when it enacted the Civil Rights Act. Kimble v. D.J. McDuffy, Inc., 648 F.2d 340 (5th Cir. 1981). In Simmons v. Poe, 47 F.3d 1370 (4th Cir. 1995), the Fourth Circuit observed that:

On April 25, 2014, Plaintiff filed his Amended Complaint (ECF No. 6) and "Motion for Preliminary Injunction and Emergency TRO" (ECF No. 7). Plaintiff's Amended Complaint (ECF No. 6) adds as party Defendants, Thomas L. Hughston, Jr. and Kristi L. Harrington, judges of the South Carolina Circuit Court, who presided at hearings and made rulings in Plaintiff's state court case. Judge Hughston and Judge Harrington are alleged to have violated Plaintiff's due process rights and committed judicial misconduct and malpractice by ignoring federal and state rules of civil procedure concerning personal jurisdiction and service of process, and by granting judgment for Defendants Harrington and Reeves, based on false statements and fraudulent documents submitted by them and their attorney, Defendant Wigger. Amended Complaint, ECF No. 6, p. 1-2. Plaintiff asks this Court for declaratory and injunctive relief to grant an emergency stay of execution of the fraudulent judgments against Plaintiff and to award $250,000.00 in monetary damages

---

> The law is well settled that to establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

47 F.3d at 1376 citing Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir. 1985). The mere conclusory allegation of a conspiracy will not be sufficient to present a claim under § 1985. Id. at 1377; see also David v. Hudgins, 896 F. Supp. 561, 571 (E.D. Va. 1995).

Plaintiff's Amended Complaint fails to allege that the Defendants were in any way motivated by discrimination against Plaintiff based on his race, color, or national origin. See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) (finding that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" to state a cause of action under 42 U.S.C. §1985). Therefore, Plaintiff fails to state a cognizable claim for relief under § 1985.

"for aggravated emotional duress and stress as Defendants have aggressively prosecuted Plaintiff attempting to confiscate his personal property." Id. at 3.

Plaintiff's Motion for Preliminary Injunction and Emergency TRO (ECF No. 7) alleges that, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Plaintiff is entitled to a preliminary injunction or emergency temporary restraining order preventing Defendants Wigger, Hattaway, and Reeves from moving, on May 1, 2014, in Colleton County Court, "in an attempt to confiscate and force the sale of the Plaintiff's family's farm." Motion, ECF No. 7, p. 1. Plaintiff's "Memorandum in Support of Preliminary Injunction and TRO" (ECF No. 7-1), alleges that Defendants "are actively seeking to set aside a property conveyance from two years past which deals with the family owned farm in an attempt to have the property confiscated and sold at a[u]ction," Id. at 1, and that "irreparable harm will be inflicted on Plaintiff and family members as well as members of the public, if Defendant is not restrained from seizure and confiscation of Plaintiff's personal property and possessions to include family owned properties," because "[t]he harm of selling the family's farm and destroying Plaintiff's livelihood and life's work is not repairable in any fashion." Id. at 2. Plaintiff alleges that his "is the only side facing harm and damage" and "Defendants will suffer no ill effects from an Injunction." Id. Plaintiff alleges that "his original complaint has shown clear and indisputable evidence that Defendants did infringe upon his civil rights under both the seventh and fourteenth amendments." Id. Plaintiff alleges that "even though this is a private matter between Plaintiff and Defendants the Public interest is of paramount importance" and "seventeen different families currently live on the Plaintiff's family's farm" and "irreparable harm will

come to many innocent people as their lives will be interrupted and their home taken away." Id.

**DISCUSSION**

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998). Further, since federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. Pinkley, Inc. V. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999) (citing Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 337 (1895). Accordingly, a federal court is required, sua sponte, to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." Bulldog Trucking, 147 F.3d at 352; see also Fed. R. Civ. P. 12(h)(3) ("Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

Generally, a case can be originally filed in a federal district court only if there is "federal question" jurisdiction under 28 U.S.C. § 1331 or "diversity of citizenship" under 28 U.S.C. § 1332, and "[t]he facts providing the court jurisdiction must be affirmatively alleged in the complaint." Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936)). Additionally, although the absence of subject matter jurisdiction may be raised at any time during the case, determining jurisdiction at the outset of the litigation is the most efficient procedure; Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); and if the court, viewing the allegations in the light most favorable to the plaintiff, finds insufficient allegations in the pleadings, the court will lack subject matter jurisdiction. Id. Such is the case here.

First, there is clearly no basis for a finding of diversity jurisdiction in this case. The diversity statute, 28 U.S.C. § 1332(a), requires complete diversity of parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000.00):

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between –
>
> (1) citizens of different States[.]

28 U.S.C. § 1332. Complete diversity of parties in a case means that no party on one side may be a citizen of the same state as any party on the other side. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 554-55 (2005); Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 372-74 & nn. 13-16. Here, this Court has no diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a citizen and resident of South Carolina and the Defendants are also citizens and residents of South Carolina.

Second, it is also clear that the essential allegations contained in Plaintiff's Complaint do not state a claim cognizable under this Court's federal question jurisdiction. Because the United States Constitution regulates only the government, not private parties, a litigant claiming, pursuant to § 1983, that his constitutional rights have been violated must first establish, as noted above, that the challenged conduct constitutes "state action." See, e.g., Blum v. Yaretsky, 457 U.S. 991, 1002 (1982). To qualify as state action, the conduct in question "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and "the party charged with the [conduct] must be a person who may fairly be said to be a state actor." Lugar, 457 U.S. at 937; see U. S. v. Int'l Brotherhood of

Teamsters, Chauffeurs, Warehousemen Helpers of Am., AFL-CIO, 941 F.2d 1292 (2d Cir.1991).

With respect to Defendants Hattaway and Reeves, although a private individual or corporation can act under color of state law, his, her, or its actions must occur where the private individual or entity is "a willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). Many factors may be considered in determining whether state action is present, Mentavlos v. Anderson, 249 F.3d 301, 311-12 (4th Cir. 2001), no single factor is determinative, and the "totality of the circumstances" must be evaluated. Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 343 (4th Cir. 2000). There is no allegation here to suggest that Defendants Hattaway and Reeves, in bringing a lawsuit against Plaintiff in state court, were engaged in anything other than purely private conduct as litigants in a civil lawsuit. Purely private conduct, no matter how wrongful, injurious, fraudulent, or discriminatory, is not actionable under § 1983 or under the Fourteenth Amendment, the two most common provisions under which persons come into federal court to claim that others have violated their constitutional rights. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1983); Burton v. Wilmington Parking Auth., 365 U.S. 715, 721 (1961).

With respect to Defendant Wigger, a private attorney, who is acting as counsel for Defendants Hattaway and Reeves in the state court action against Plaintiff, he is not a state actor. Defendant Wigger's actions, in representing his clients in state court, do not constitute state action or action under color of state law. It is well settled that "[a] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." Polk County v. Dodson, 454 U.S. 312,

318 (1981). “Although lawyers are generally licensed by the States, ‘they are not officials of government by virtue of being lawyers.’” Id. at 319 n.9 (quoting In re Griffiths, 413 U.S. 717, 729 (1973)). An attorney, whether retained, court-appointed, or a public defender, does not act under color of state law when performing traditional functions as counsel. See Deas v. Potts, 547 F.2d 800 (4th Cir. 1976) (private attorney); Fleming v. Asbill, 42 F.3d 886, 890 (4th Cir. 1994) (“Private lawyers do not act ‘under color of state law’ merely by making use of the state’s court system.”); see also Lugar, 457 U.S. at 936 (“Careful adherence to the ‘state action’ requirement . . . also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.”).

With respect to Defendants Hughston and Harrington, a judicial officer in the performance of his or her duties has absolute immunity from suit. Mireles v. Waco, 502 U.S. 9, 12 (1991). Plaintiff is barred by the doctrine of absolute judicial immunity from bringing an action, pursuant to § 1983, seeking monetary damages or injunctive relief against Defendants Hughston and Harrington. The doctrine of absolute immunity for acts taken by a judge in connection with his or her judicial authority and responsibility is well established and widely recognized. See Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (judges are immune from civil suit for actions taken in their judicial capacity, unless “taken in the complete absence of all jurisdiction.”); Siegert v. Gilley, 500 U.S. 226 (1991) (immunity presents a threshold question which should be resolved before discovery is even allowed); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (absolute immunity “is an immunity from suit rather than a mere defense to liability”); Stump v. Sparkman, 435 U.S. 349, 359 (1978) (“A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.”).

There are two circumstances where a judge's immunity from civil liability may be overcome. The exceptions are narrow in scope and infrequently applied. The first exception is where a judge engages in nonjudicial acts, i.e., actions not taken in the judge's judicial capacity. Id.; see Figueroa, 208 F.3d at 440. The second exception involves actions that, though judicial in nature, are taken in the complete absence of jurisdiction. Mireles, 502 U.S. at 12. Generally, "'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" Barnes v. Winchell, 105 F.3d 1111, 1122 (6th Cir. 1997). There is, of course, a difference between an act in excess of jurisdiction and one in the absence of jurisdiction. The United States Supreme Court, in Stump, provided an example:

> If a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Stump, 435 U.S. at 357 n.7. In King v. Myers, 973 F.2d 354 (4th Cir. 1992), the Fourth Circuit looked to the nature of the function performed, pursuant to Forrester v. White, 484 U.S. 219, 227-29 (1988), in determining that judicial immunity barred a lawsuit against a magistrate who ordered the arrest of the plaintiff without a warrant. The court found

> [the magistrate's] actions were judicial in that, while she may have exceeded her authority in the manner in which she ordered the arrest, she performed a function 'normally performed by a judge.' Stump v. Sparkman, 435 U.S. at 362. Therefore, the district court properly determined that Magistrate Myers was entitled to judicial immunity.

King, 973 F.3d at 356-58 (4th Cir. 1992). Neither exception to the doctrine of absolute judicial immunity is applicable in the instant case.

Section 1983 also bars claims for injunctive relief "unless a declaratory decree was violated or declaratory relief was unavailable." See, 42 U.S.C. § 1983; see also e.g., Arena v. Dep't of Soc. Servs., 216 F. Supp. 2d 146, 154 (E.D.N.Y. 2002) (1996 amendments to § 1983 superseded Pulliam v. Allen, 466 U.S. 522, 80 L. Ed. 2d 565 (1984) and Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719 (1980), with respect to injunctive relief). Thus, in the instant case, Defendants Hughston and Harrington are immune from Plaintiff's claims for injunctive relief. However, Defendants Hughston and Harrington are not immune from Plaintiff's requests for declaratory relief. Nevertheless, summary dismissal of Plaintiff's claims against them for declaratory relief is appropriate in this case. "District courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998). "Declaratory judgments . . . are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct." Johnson v. McCuskey, 72 F. App'x 475, 477 (7th Cir. 2003). They are not "meant simply to proclaim that one party is liable to another." Id. at 478. In the instant case, Plaintiff seeks a declaration that Defendant Hughston's and Defendant Harrington's rulings and/or judgments in Plaintiff's state court case were fraudulent. See Amended Complaint, ECF No. 6, p. 3. The undersigned finds that "Plaintiff is not entitled to the declaratory relief that he seeks in the instant Complaint because he does not ask the Court to define the parties' rights in the future, he seeks merely a declaration from the Court that Defendant[s] violated his rights in the past." Stokes v. Moorman, C/A No. 9:10-1711-CMC-BM, 2010 WL 3862568, at *5 (D.S.C. Aug. 17, 2010) adopted by 2010 WL 3834470 (D.S.C. Sept. 27, 2010).

Additionally, to the extent that Plaintiff attempts to set forth causes of action against Defendants based in state law, this Court does not have jurisdiction to hear them. Federal courts are allowed to hear and decide state-law claims only in conjunction with federal-law claims, through the exercise of "supplemental jurisdiction." See 28 U.S.C. §1367; Wisconsin Dep't of Corr. V. Schacht, 524 U.S. 381, 387 (1998). Since Plaintiff has asserted no cognizable federal claim, this Court cannot exercise "supplemental" jurisdiction over Plaintiff's state claims, if any. See Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999) ("[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants").

Essentially, Plaintiff is complaining about various procedural mistakes, legal errors, and fraudulent acts made or taken by Defendants in Plaintiff's state-court proceedings. As to any challenges to final judgments in the state court proceedings, the Rooker-Feldman Doctrine bars them. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). As to Plaintiff's challenges to pending state-court proceedings, the Younger Abstention Doctrine counsels against considering them. See Younger v. Harris, 401 U.S. 37 (1971); Neal v. Wilson, 112 F.3d 351, 356 (8th Cir.1997) (explaining that "to the extent that any portion of [the] complaint survived the jurisdictional bar of the Rooker-Feldman doctrine, the district court correctly ruled that Younger abstention was warranted"). Both doctrines may be raised by the Court sua sponte. See Jordahl v. Democratic Party of Va., 122 F.3d 192, 197 n. 5 (4th Cir.1997); Bellotti v. Baird, 428 U.S. 132, 143 n. 10 (1976). Rooker-Feldman is jurisdictional. American Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 316 (4th Cir.2003).

To the extent Plaintiff claims that he was injured by alleged erroneous proceedings and rulings made in the Charleston County or Colleton County Common Pleas Court of the State of South Carolina, such rulings cannot be reviewed or set aside by the United States District Court for the District of South Carolina. See Rooker, 263 U.S. 413; Feldman, 460 U.S. 462. This prohibition on review of state court orders by federal district courts is commonly referred to as the Rooker-Feldman Doctrine. This doctrine is implicated when to rule in favor of the plaintiff on his or her claims in connection with state court proceedings would, necessarily, require the federal court to overrule (or otherwise find invalid) various orders and rulings made in the state court. Such a result is prohibited under the Rooker-Feldman Doctrine. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293-94 (2005); Davani v. Va. Dep't of Transport., 434 F.3d 712, 719-20 (4th Cir.2006); Chapman v. South Carolina Dept. of Corrections, 2012 WL 1895932, at *5 (D.S.C. May 01, 2012). Plaintiff's allegations invite a quintessential application of Rooker-Feldman, barring cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp., 544 U.S. at 283. Plaintiff lost in this state court judgment, by his own admission, and now expressly seeks to have it "set aside." Such appeals of state court decisions, however, must be pursued through the state appellate courts and then directly to the United States Supreme Court. Under 28 U.S.C. § 1257, the United States Supreme Court is the only federal court with general statutory jurisdiction to review state-court judgments.

Plaintiff's Amended Complaint and Motions repeatedly attempts to frame the facts of the case as violations of various Plaintiff's constitutional rights and §1983. See Neal,

112 F.3d at 356. It does not, however, present any general challenge to the constitutionality of a South Carolina procedural rule or statute, as is an exception to the Doctrine. See Feldman, 460 U.S. at 486. Just the opposite, Plaintiff contends that the constitutional violations arose from failure to enforce such rules and statutes in the context of his state-court proceedings. Thus, this Court lacks "jurisdiction under the Rooker-Feldman doctrine to consider [the] complaint because his federal claims are inextricably intertwined with his state case." See Neal, 112 F.3d at 356.

As to Plaintiff's request in his Amended Complaint (ECF No. 6) and Motion for Preliminary Injunction and Emergency TRO (ECF No. 7), to enjoin current and future state-court proceedings in Colleton County Common Pleas Court to enforce the judgment against Plaintiff, this Court should abstain from interfering with that ongoing litigation, pursuant to the Younger abstention doctrine. In Younger v. Harris, 401 U.S. 37, 43-44 (1971), the United States Supreme Court held that a federal court should not equitably interfere with state criminal proceedings "except in the most narrow and extraordinary of circumstances." Gilliam v. Foster, 75 F.3d 881, 903 (4th Cir.1996). This doctrine has been extended to cases involving state civil and administrative proceedings. See Trainor v. Hernandez, 431 U.S. 434 (1977) (civil litigation where the state is a party); Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987) (civil litigation between private parties); Middlesex County Ethics Committe v. Garden State Bar Association, 457 U.S. 423 (1982) (state administrative proceedings); Nivens v. Gilchrist, 444 F.3d 237 (4th Cir.2006).

From Younger and its progeny, the United States Court of Appeals for the Fourth Circuit has culled the following test to determine when abstention is appropriate: "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state

interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings." Martin Marietta Corp. v. Maryland Comm'n on Human Relations, 38 F.3d 1392, 1396 (4th Cir.1994) (citing Middlesex County, 457 U.S. at 432).

With respect to the ongoing state litigation in which Plaintiff and Defendants Wigger, Hattaway, and Reeves are involved, serious state interests are implicated in the enforcement of state policy embodied in the State of South Carolina's rules and statutes, and its substantial interest in its property law. See Trainor v. Hernandez, 431 U.S. at 444; Harper v. Pub. Serv. Comm'n of W.Va., 396 F.3d 348, 352 (4th Cir. 2005) ("[P]roperty law concerns . . . are frequently 'important' state interests justifying Younger abstention."); Fisher v. Fed. Nat. Mortg. Ass'n, 360 F.Supp. 207, 210 (D.Md. 1973). There is no indication or allegation that normal hearing, trial, or appeal processes available in this pending state-court proceeding are unavailable to vindicate Plaintiff's federal concerns. Plaintiff alleges that, in the Charleston County Common Pleas case, "Plaintiff's appeal to the higher state court was dismissed due to a procedural error in Plaintiff's filing." Memorandum in Support of Preliminary Injunction and TRO, ECF No. 7-1, p. 2. However, Plaintiff alleges that he is actively contesting the Colleton County proceeding, and "has been forced to hire two Attorneys to combat this malicious attack on Plaintiff's right to be secure in his property." Amended Complaint, ECF No. 6, p. 2. The Younger abstention doctrine "requires a federal court to abstain from interfering in state proceedings, even if jurisdiction exists," Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 165 (4th Cir. 2008). "'Younger is not merely a principle of abstention; rather, the case sets forth a mandatory rule of equitable restraint, requiring the dismissal of a federal action.'" Williams v. Lubin,

516 F.Supp.2d 535, 539 (D.Md. 2007) (quoting Nivens v. Gilchrist, 444 F.3d 237, 247 (4th Cir. 2006)).

Additionally, a federal district court must apply a rigorous four-part test in determining whether to grant a preliminary injunction. To qualify for such relief, the moving party must show (1) likelihood it will succeed on the merits; (2) likelihood it will suffer irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities tips in its favor; and (4) that the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The Winter standard requires the district court to find that the party seeking the injunction has made a "clear showing" that he is likely to succeed on the merits. Id. at 22. This standard compels the moving party to show that he is likely to prevail. Regardless of the balance of hardships, it is insufficient for the party to show only that "grave or serious questions are presented" in the litigation. Compare Real Truth About Obama v. FEC, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 558 U.S. __, 130 S. Ct. 2371 (2010), with Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co., 550 F.2d 189, 196 (4th Cir. 1977).[5] The Fourth Circuit no longer recognizes a

---

[5] In Real Truth, the Fourth Circuit modified its prior approach, which required district courts to balance the likelihood of irreparable harm to each party as a "first step" in its analysis, and then to consider the likelihood of success only as a secondary matter, dependent upon the outcome of the initial balance-of-hardships test. See Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co., 550 F.2d 189, 195-96 (4th Cir. 1977). The Supreme Court vacated Real Truth and remanded the case for further consideration in light of Citizens United v. Federal Election Comm'n, 558 U.S. ___, 130 S. Ct. 876 (2010), which related to corporate electioneering communications under the First Amendment. See Real Truth About Obama, Inc. v. FEC, 558 U.S. __, 130 S. Ct. 2371 (2010). The Fourth Circuit remanded the First Amendment-related aspects of the case to the district court but reissued, inter alia, the portion of the 2009 opinion setting forth the Winter-Real Truth preliminary injunction standard. See Real Truth About Obama, Inc. v. FEC, 607 F.3d 355 (4th Cir. 2010).

"flexible interplay" among these four criteria. Instead, each requirement must be fulfilled as articulated. Id. (quoting Blackwelder, 550 F.2d at 196).

Here, where Plaintiff's Amended Complaint is recommended for summary dismissal, because Plaintiff's pleadings fail to establish that this Court has jurisdiction over any of his claims against any of the named Defendants, Plaintiff's Motion for Preliminary Injunction should be denied.[6]

**RECOMMENDATION**

Based upon the foregoing, it is recommended that Plaintiff's Amended Complaint (ECF No. 6) be summarily dismissed, without prejudice and without issuance and service of process, and that Plaintiff's Motion for Preliminary Injunction and Emergency TRO (ECF No. 7) be denied.

Plaintiff's attention is directed to the important notice on the next page.

s/Bruce Howe Hendricks
United States Magistrate Judge

May 12, 2014
Charleston, South Carolina

---

[6] There is some view that a claim for money damages in federal court should be stayed during the pendency of civil actions in state court, as opposed to the dismissal of a claim for equitable relief. See Gilbertson v. Albright, 381 F.3d 965, 968 (9th Cir. 2004). This would produce a strange result, however, insofar as the final judgment in any pending state-court case would seem to only then implicate Rooker-Feldman.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk of Court
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).